**In the Matter of the RECEIVERSHIP OF the MT. PLEASANT BANK AND TRUST COMPANY, Mt. Pleasant, Iowa.**

**Adam Judgment Holders, Appellants,**

**Federal Deposit Insurance Corporation, Appellee.**

**No. 93–462.**

Supreme Court of Iowa.

Jan. 18, 1995.

McGIVERIN, Chief Justice.

Judgment creditors of an insolvent Iowa state bank made several objections to the final report of the Federal Deposit Insurance Corporation (FDIC) as receiver of the bank. The district court overruled the objections and approved the final report. The objectors appealed. We affirm.

## I. Background facts and proceedings.

A. *FDIC's appointment to and handling of the receivership.* The objectors, the Adam Judgment Holders (AJH), were several judgment creditors of the Mt. Pleasant Bank and Trust Company, Mt. Pleasant, Iowa (MPB). AJH originally held claims for grain sold to or stored by the Prairie Grain Company of Stockport Iowa, which became bankrupt. The history of how AJH became judgment creditors of MPB is set out in *Adam v. Mt. Pleasant Bank and Trust Co.*, 387 N.W.2d 771 (Iowa 1986), and in other cases cited therein.

MPB was an Iowa banking corporation organized and existing under the laws of the state of Iowa. On August 6, 1982, the superintendent of banking for the Iowa Banking Commission (superintendent) determined MPB's business conduct and financial condition were unsafe and unsound, and its capital was impaired. *See* Iowa Code § 524.224 (1981). Upon making these determinations, the superintendent closed MPB pursuant to Iowa Code section 524.226.

On the same date, the superintendent filed a petition with the Iowa district court for Henry County (receivership court), asking for the appointment of a receiver for MPB. *See id.* § 524.1310. The superintendent tendered the appointment as receiver of MPB to the Federal Deposit Insurance Corporation (FDIC), a federal agency, *see id.* § 524.1313; and the FDIC accepted the appointment, *see* The Federal Deposit Insurance Act of 1950, 12 U.S.C. § 1821(c)(3).[1] The receivership court approved the petition and appointed FDIC as receiver (FDIC–Receiver). *See*

James Walker, Bloomington, IL, and James P. Hoffman, Keokuk, for appellants.

Charles D. Neighbor of F.D.I.C., Chicago, IL, Ann S. DuRoss, Asst. General Counsel, Robert D. McGillicuddy, Sr. Counsel, and Gregory E. Gore, Counsel, of F.D.I.C., Washington, DC, and Steven T. Hunter and Linda A. Whittaker of Stanley, Lande & Hunter, Muscatine, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and ANDREASEN, JJ.

---

1. In this case, FDIC was required to accept the appointment. *See* 12 U.S.C. § 1821(e) (1988). Since the enactment of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183 (1989) (effective Aug. 9, 1989), the FDIC can decline appointments by state authorities. 12 U.S.C. § 1821(c)(3)(A) (1989) (FDIC "may accept such appointment.").

Iowa Code § 524.1310. FDIC–Receiver then became vested with all the powers, privileges, and duties of the state superintendent of banking as provided by Iowa Code section 524.1313, and took possession of ·and title to all the assets, business, and property of MPB.

Acting pursuant to these powers and with court authorization, FDIC–Receiver entered into a purchase and assumption agreement with Hawkeye Bank and Trust (HBT), whereby HBT acquired certain assets and liabilities of MPB. The purpose of that contract was to protect the bank's depositors and keep the bank open for service to the public.

FDIC–Receiver then sold the remaining assets of MPB to FDIC in its corporate capacity (FDIC–Corporate) subject to the provision that should FDIC–Corporate recover any excess over the purchase price upon complete liquidation, and after· certain adjustments as set forth in the contract between FDIC–Receiver and FDIC–Corporate, it would tender back to FDIC–Receiver that excess recovery.[2]

The contract between FDIC–Receiver and FDIC–Corporate identified the assets purchased by FDIC–Corporate, which included claims against MPB's former officers and directors for alleged improper acts and a claim on MPB's blanket bond in connection therewith. The contract also addressed the method by which FDIC–Corporate would account for its liquidation of the purchased assets and outlined the administrative expenses which would be paid to FDIC–Corporate prior to the return of any excess recovery to FDIC–Receiver. Further, the contract permitted FDIC–Corporate to recoup a reasonable return on its investment. The receivership court approved this contract between the two FDIC entities.

Following through on one of its acquired assets, FDIC–Corporate filed suit in federal district court against certain former officers and directors of MPB on August 12, 1983.

FDIC–Corporate also made claim under MPB's blanket bond.

After extensive settlement negotiations, the insurance company for MPB's former officers and directors and bonding company made an offer to FDIC–Corporate to settle all claims against them and their insureds for $1.75 million.

On January 13, 1988, FDIC–Receiver filed an application with the receivership court for instructions concerning this settlement offer, and notice was given to all interested parties, including AJH. A hearing was held on the matter, and the receivership court approved of the settlement terms. After receiving this court authorization, FDIC accepted the settlement offer and dismissed the federal court suit.

B. *Receiver's final report and objections thereto.* Having substantially completed the liquidation of MPB, FDIC–Receiver filed a petition for termination of the receivership on August 6, 1991 in the receivership court. Among other things, FDIC–Receiver asked that the court approve payment of the final expenses, confirm and approve the acts and accounting of FDIC–Receiver and FDIC–Corporate, and order that FDIC, in its receivership and corporate capacities, be fully released and discharged from any further obligations or liabilities in connection with the liquidation of MPB.

Attached to the petition for termination was a statement of receipts and disbursements by FDIC–Corporate regarding its liquidation of MPB's assets. The statement was certified to have been compiled from the books and records of MPB, as maintained by the FDIC, in accordance with standard FDIC liquidation policies and procedures. *See* 12 U.S.C. § 1821(d)(15)(A) (1989). The statement of receipts and disbursements showed that FDIC–Corporate collected an excess recovery and that a net liquidation recovery of at least $792,889 was available for distribution to the receivership's unsecured creditors on a prorata basis.[3] Subse-

---

2. For an explanation of the FDIC's ability to act in the two different capacities of FDIC–Receiver and FDIC–Corporate, *see In re First Nat'l Bank in Humboldt,* 523 N.W.2d 591, 594 (Iowa 1994).

3. Although FDIC's final report in this case states that there will be at least $792,889 in excess funds that will be available for distribution to creditors of MPB, the receivership court has previously ordered partial distribution. An updated

quently, the FDIC supplemented its final report with additional filings.

After receiving notice of the FDIC–Receiver's petition for termination of the receivership, AJH timely filed written objections to it. Among other contentions, AJH objected that: (1) The accounting FDIC provided to the court contained no detail or specificity as required by Iowa Code section 524.1311(3); (2) FDIC paid or proposed to pay itself unjustified and excessive amounts for salary expenses, travel expenses, legal fees, other professional fees, other expenses, and interest on FDIC's investment; (3) FDIC violated its duty to other creditors by paying participant banks more than their ratable share of the receivership estate and further violated the rule that, in a purchase and assumption, if the FDIC pays some creditors in a class, it must pay all creditors in that class the same percent of their loss or leave (or add) enough money in the receivership estate so that the remaining creditors are paid the same percentage upon distribution of the receivership estate; and (4) FDIC improperly investigated and settled the claims against MPB's former directors and officers and blanket bonding company.

FDIC–Receiver filed a motion for partial summary judgment on the objections regarding the settlement of the directors and officers' litigation and the blanket bond claim. AJH resisted the motion, but the receivership court granted partial summary judgment, concluding that the objections were precluded by the receivership court's previous order which had approved and authorized FDIC's acceptance of the settlement.

The remaining objections were heard at trial. Jeffrey Samuels, an FDIC senior accountant, testified for FDIC. He testified that he has responsibility for closing failed banks and that MPB was within his jurisdiction. He stated that his jurisdiction encompassed twenty-six states, and that, at the time of trial, his office was managing eighty receiverships for 158 failed institutions.

His testimony explained the history of the FDIC receivership of MPB, from the ac-counting performed on the date the superintendent closed MPB to the date FDIC–Receiver filed the petition for termination of the receivership. Samuels also explained that FDIC prepares its reports and other documents in accordance with regulatory accounting principles and FDIC manuals.

Samuels' testimony focused on the statement of receipts and disbursements (statement) which was attached to FDIC's petition for termination. The statement showed the recovery due to FDIC–Receiver under its contract with FDIC–Corporate. Samuels stated that he and employees under his direction prepared the statement in accordance with FDIC policies. Samuels testified that in preparing the statement he reviewed FDIC–Corporate's general ledger year by year, from 1982 through 1991, for the liquidation. He explained that the statement constitutes a summary of that financial information and that all of the underlying data was in the FDIC's detailed trial balance, which was admitted into evidence at trial. He described the trial balance as a series of cumulative annual reports which are FDIC records addressing the condition of the receivership for each year.

In addition to describing FDIC's specific accounting for the liquidation of MPB, Samuels referred to several manuals, which are official publications adopted by the FDIC and which are utilized in preparing FDIC's trial balance and its statement of receipts and disbursements. The manuals introduced into evidence at trial included the FDIC's Regional Accounting Manual, which contains a chapter on preparing the termination of a receivership; and the Accounting for Receivership Liabilities Manual, which standardizes the way each FDIC office accounts for the payment of dividends and recording liabilities, provides an in-depth discussion of receivership liability accounting and financial reporting responsibilities, and identifies the method and forms which the FDIC uses in accounting for receiverships. Samuels testified that these manuals provided the framework and guidance by which the FDIC con-

statement of receipts and disbursements states that the remaining current amount for disposi-

tion up through November 30, 1992 is $117,497.

ducted itself in closing out the affairs of MPB.

AJH cross-examined Samuels at the trial but did not offer any evidence to dispute his testimony.

After the trial, the receivership court entered an order approving the final report. The court rejected AJH's contention that FDIC's accounting was conclusory and insufficient. The court noted that the documents were complex and, based on the evidence before it, concluded FDIC's accounting was complete and adequate.

The court also rejected AJH's contention that FDIC paid itself unjustified and excessive expenses for salaries, travel, legal fees, other professional fees, other expenses and interest. The court noted that AJH offered neither evidence nor theories why the legal fees and expenses were inappropriate, and determined that all claimed expenses were specifically allocated to MPB and were reasonable and necessary. With respect to the interest paid to FDIC–Corporate, the court held that the court-approved contract between FDIC–Receiver and FDIC–Corporate permitted FDIC to pay interest to FDIC–Corporate.

The court further found and concluded that FDIC did not act inappropriately in paying the participating banks their shares of the loan proceeds. The court stated that resolution of this issue depended on principles of contract law and that, in accordance with those principles, FDIC correctly honored and carried out its contractual obligations to the participant banks.

On the basis of these findings and conclusions, the receivership court overruled and dismissed AJH's claims, approved FDIC's final report, and allowed FDIC's petition for termination of the receivership, subject to the filing of a compliance report concerning distribution of the remaining funds held by the FDIC.

AJH filed notice of appeal. FDIC moved to dismiss the appeal as interlocutory. We denied the motion and granted AJH permission to appeal in advance of final judgment. *See* Iowa R.App.P. 1(c).

■ This is an equitable proceeding. Therefore, our review is de novo. Iowa R.App.P. 4. Although we are not bound by the trial court's factual findings, we do give weight to them. *Hanson v. Minette,* 461 N.W.2d 592, 593 (Iowa 1990) (citing Iowa R.App.P. 14(f)(7)).

■ II. *Evidentiary objection.* AJH preliminarily assert that the district court erroneously overruled their hearsay objection to an FDIC exhibit, identified as the receiver's trial account balances and monthly detail concerning MPB. AJH contend that the district court should not have admitted this exhibit into evidence at trial because it is hearsay and does not fall within the business records exception to the hearsay rule. *See* Iowa R.Evid. 803(6). AJH argue that the exhibit does not contain the details of the payments for which it was offered and that the circumstances of its preparation indicate a lack of trustworthiness.

We agree with AJH that the exhibit is hearsay but conclude that it was admissible at trial under the business records exception to the hearsay rule, Iowa rule of evidence 803(6). Samuels' testimony demonstrated that the exhibit was made in the regular course of the receiver's business and showed it was trustworthy by explaining that the exhibit was a product of FDIC's regulatory accounting policies and manuals. There is no merit to this assignment of error.

■ III. *Burden of proof, applicable law, and sufficiency of FDIC's accounting and report.* FDIC–Receiver has the burden of proof to show that it has met the requirements necessary for court approval of its actions as receiver and for termination of its receivership.

■ The district court impliedly held that FDIC–Receiver met its burden of proof by presenting sufficient evidence for the court to approve its final report which contained its various receipts and expenditures, and that the AJH objectors offered no evidence that the expenses and fees were unnecessary or unreasonable. We agree with the district court and conclude that FDIC–Receiver sufficiently established that its actions and final report meet federal accounting and reporting

555

requirements, as authorized by Iowa Code chapter 524 (1991) and prescribed by federal law.

■ Iowa Code section 524.1313(1) states that:

If the federal deposit insurance corporation accepts the appointment as receiver, the rights of depositors and other creditors of the insured state bank *shall be determined in accordance with the laws of this state.*

(Emphasis added.)

The law of this state provides in Iowa Code section 524.1313(2) that:

The federal deposit insurance corporation as receiver shall possess all the powers, rights and privileges given to the superintendent under section 524.1311, *except insofar as that section may be in conflict with the laws of the United States.*

(Emphasis added.)

Iowa Code section 524.1311(3) requires that:

At the termination of the receivership, the superintendent shall file a final report containing the *details of the superintendent's actions therein,* together with such additional facts as the court may require.

(Emphasis added.)

This section's "detailed report" requirement conflicts with 12 United States Code section 1821(d)(15)(A) (1989), which does not require the FDIC to engage in such detailed reporting. 12 United States Code section 1821(d)(15)(A) requires the FDIC to

[be] consistent with the accounting and reporting practices and procedures established by the [FDIC] corporation [i.e. regulatory policies and manuals], maintain a full accounting of each ... receivership or other disposition of institutions in default.

Since this federal law regarding FDIC's accounting and reporting practice conflicts with state law regarding the same for a state receiver, the federal law applies to this case as mandated by Iowa Code section 524.1313(2).

FDIC satisfied its burden of showing that it has met all of its accounting and reporting obligations under federal law to justify to the court its receipts and expenditures. FDIC produced substantial records of its actions, and Samuels, an FDIC senior accountant, testified that FDIC followed all of FDIC's regulatory accounting policies and manuals in producing its records and final report. As the district court stated:

FDIC–Receiver has provided an adequate and correct accounting for its handling of the affairs of [MPB] from the inception of the receivership through the date of the filing of the petition for termination and closing.

On the other hand, the AJH objectors did not produce any contrary evidence to prove their contention that the FDIC paid itself unjustified and excessive amounts for salary expenses, travel expenses, legal fees, other professional fees, and other expenses. Accordingly, we agree with the district court's dismissal and overruling of AJH's objections to FDIC's accounting and reporting of its receipts and expenditures as receiver for MPB.

■ IV. *Interest paid to FDIC–Corporate.* AJH next contends that the interest FDIC–Corporate paid to itself on funds advanced to assist in the liquidation and windup of MPB was unjustified and excessive. The district court concluded that the court-approved contract between FDIC–Receiver and FDIC–Corporate permitted the payment of interest to FDIC–Corporate. We agree.

With respect to this objection to the interest paid FDIC–Corporate, the district court stated:

It is not seriously disputed that from the inception of this receivership it was necessary for FDIC–Corporate to infuse substantial sums of money into this receivership in order to carry out its mandated responsibility as the overseer of the orderly closing of a failed bank. The interest on FDIC[–Corporate]'s investment is provided for as part of the contract of sale signed by FDIC–Receiver and FDIC–Corporate on August 8, 1982 which contract was approved by the court on the same day. In effect, the order approving the contract allows FDIC–Corporate to charge interest on its investment.

We agree with the district court's reasoning that FDIC's payment of interest to FDIC–Corporate was justifiable as a matter of contract law, and thus its conclusion that AJH failed to show why the interest should not be allowed.

■ Furthermore, we note that under Iowa Code section 524.1312(1), if an institution's assets are insufficient to cover all of the institution's liabilities, "payment of costs and expenses of the administration of the dissolution" has priority over "the payment of all other claims pro rata." FDIC's interest payment to FDIC–Corporate was a liquidation expense. Accordingly, the payment of FDIC's interest payment to FDIC–Corporate had priority over payment of AJH's claims.

■ V. *Participation loans.* AJH's next major objection to FDIC's petition for approval and termination of the receivership is that FDIC violated its duty to other creditors by paying participant banks more than their ratable share of the receivership estate. The district court determined that FDIC properly made payments to participating banks as a matter of contract law, and we agree.

A loan participation is a solution to the lending limits federal and state laws place on banks in order to reduce the banks' risks of insolvency. Lending limits for small banks often prevent them from making loans which meet the needs of their principal customers. By engaging in a loan participation, a "lead bank" can lend an amount to a customer in excess of the bank's lending limit, divide the loan into shares, and then contract to sell the shares to "participating banks." The result of the agreement is that the banks share in sponsoring the customer's loan and thereby do not exceed their lending limits. *See, e.g., FDIC v. State Bank of Virden,* 893 F.2d 139, 140 (7th Cir.1990); *Hibernia Nat'l Bank v. FDIC,* 733 F.2d 1403, 1407 (10th Cir.1984).

MPB, as a "lead bank," had entered into several loan participation agreements with other "participant banks" prior to its insolvency.

AJH complain that FDIC paid these participant banks, allegedly creditors in the same class as AJH, 100 percent of their loss, and yet propose to pay AJH a much lower percentage of their loss. AJH contend that such an action by the FDIC is in violation of the rule that, in a purchase and assumption, if the FDIC pays some creditors in a class, it must pay all creditors in that class the same percent of their loss or leave (or add) enough money in the receivership estate so that the remaining creditors are paid the same percentage upon distribution of the receivership estate. *See* The National Banking Act (NBA), 12 U.S.C. § 91 (1989).

This argument lacks merit because the participant banks were not mere creditors of the receivership estate but were parties to contracts with MPB. As stated by the district court, all FDIC did in this case was properly honor MPB's contracts with participant banks by paying each of them its fair share upon receipt of payments from the debtors. Other jurisdictions are in accord. *See, e.g., FDIC v. Mademoiselle of California,* 379 F.2d 660, 664 (9th Cir.1967) ("[A] direct recovery against the receiver [by a participant bank] in preference to the general pro rata distribution of assets 'is authorized in situations where the facts are such that the court must say in equity that the property is not that of the bank but that of the [participant bank].' ") (quoting *John L. Walker Co. v. Alden,* 6 F.Supp. 262, 267 (E.D.Ill.1934)). Thus, we agree with the district court in overruling this objection to FDIC's actions and final report.

VI. *Grant of partial summary judgment to FDIC regarding settlement of claims.* Finally, AJH contend that the district court erred in granting partial summary judgment in favor of the receiver regarding the receiver's disposition of its 1983 suit in federal district court against MPB's former directors and officers for alleged improper actions and its claim against MPB's former bonding company in connection therewith. The district court concluded that this objection had been rejected by the receivership court's prior order. We agree.

In 1988 the insurance company of MPB's former directors and officers and bonding company offered to settle all claims for $1.5 million as to the former directors and officers

and for $250,000 as to the bonding company, for a total of $1.75 million. FDIC notified the receivership court, and its application for instructions concerning settlement was set for hearing before the court. Notice was given to AJH and other interested persons. After an evidentiary hearing, in which AJH's counsel participated, in 1988 the district court approved the proposed settlement as follows:

> It is the conclusion of the court that FDIC accept the offer made to FDIC in the amount of $1,750,000 in full settlement of the claims made by FDIC against the directors and officers of the bank.

After AJH objected in 1992 to the portion of the receiver's final report concerning FDIC's settlement of those claims, FDIC filed a motion for partial summary judgment as to that objection by AJH. The district court sustained FDIC's motion on the basis that AJH was attempting to relitigate the same issues that were previously before the court which had directed the settlement.

AJH now claims the 1988 settlement approval by the court was defective because (1) only the federal court had subject matter jurisdiction to approve a settlement of the claims; and (2) the 1988 order did not authorize settlement of the bond claim.

A. As to the jurisdictional matter, we believe that AJH's argument fails because whether FDIC was acting in its capacity as receiver or in its corporate capacity, the district court had subject matter jurisdiction in either event.

■ Under 12 United States Code section 1819(a) (Fourth) (1989), Congress has granted the FDIC the power "[t]o sue and be sued, and complain and defend, in any court of law or equity, State or Federal." This grant of jurisdiction is limited only by the language which follows in section 1819(b)(2)(D). *See In re S. Indus. Banking Corp.*, 872 F.2d 1257, 1260 (6th. Cir.1989). The limiting language found in section 1819(b)(2)(D) has been interpreted by several courts to prohibit federal subject matter jurisdiction when three conditions are present. *See, e.g., id.; FDIC v. Bank of Boulder*, 911 F.2d 1466, 1471 (10th Cir.1990), *cert. denied*,

499 U.S. 904, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991); *FDIC v. Nichols*, 885 F.2d 633, 636 (9th Cir.1989). Those three conditions are as follows:

> First, the FDIC must be a party to "such suit" in its capacity as a receiver of a state bank.... Second, the suit must involve only the rights or obligations of depositors, creditors, stockholders, and the state bank itself.... Third, the suit must involve such rights or obligations under state law.

*In re S. Indus. Banking Corp.*, 872 F.2d at 1260.

This jurisdictional scheme set out in section 1819 has been interpreted by one court as:

> [a recognition of] FDIC's dual role with respect to insured state banks by providing for federal jurisdiction in cases where FDIC is acting in its corporate capacity as federal insurer of state bank deposits, but expressly excluding jurisdiction in cases where FDIC is acting as receiver of a state bank and the case involves only state law issues.

*FDIC v. Sumner Fin. Corp.*, 602 F.2d 670, 679 (5th Cir.1979).

Here, assuming FDIC was acting in its capacity as receiver when it settled the claims, AJH's argument that a federal court rather than the state district court had subject matter jurisdiction necessarily fails. Under section 1819(b)(2)(D) federal jurisdiction over the matter would have been prohibited.

■ Furthermore, AJH's jurisdictional argument also fails if we assume that FDIC was acting in its corporate capacity. Section 1819 allows federal jurisdiction when FDIC is acting in its corporate capacity but nothing in FIRREA makes such federal jurisdiction exclusive. *See Simard v. Resolution Trust Corp.*, 639 A.2d 540, 548–49 (D.C.1994) ("there is no clear expression in FIRREA, or any implicit direction in its language or legislative history, that subject-matter jurisdiction lies exclusively with the federal district courts"). "[A]bsent [such] provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication, ... [t]he general principle

... [is that] state courts may assume subject matter jurisdiction." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–78, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784, 791 (1981). Thus, we believe Congress provided for concurrent jurisdiction over certain FDIC matters,[4] giving the state district court subject matter jurisdiction over settlement of the claims. Therefore, AJH's jurisdictional argument is rejected.

B. We also believe the district court at the time of its 1988 ruling understood the proposal for settlement which had been made to FDIC included both the directors and officers' claim and the bond claim. The court clearly held it was in the best interest of the receivership that such offer be accepted. Although the court's final ruling approving the settlement could have been clarified by segregating $1.5 million to the directors and officers' claim and $250,000 to the bond claim, the intention of the court's ruling is clear that settlement of both claims be approved for the total sum of $1.75 million.

In granting partial summary judgment to FDIC, the receivership court noted that no issue was raised by AJH which suggested that the two settlements were not made as directed by the court in its 1988 order.

We conclude the receivership court properly granted FDIC's motion for partial summary judgment concerning this AJH objection to the receiver's final report. There is no merit in this assignment of error.

VII. *Conclusion.* We have considered all contentions raised by AJH, whether specifically discussed or not, and find no merit in them. Accordingly, we affirm the judgment of the district court approving the FDIC's final report and directing the termination of the receivership of MPB.

**AFFIRMED.**

---

**4.** Our conclusion that Congress provided for concurrent jurisdiction is further supported by the fact that Congress granted the receiver discretion to remove cases to federal court. *See* 12 U.S.C. § 1819(b)(2)(B) (1989). If Congress had intended to provide exclusive jurisdiction to the federal courts, the provision granting the receiver the right to remove an action to federal court would be superfluous. *See Armstrong v. Resolution Trust Corp.*, 234 Ill.App.3d 162, 175 Ill.Dec. 195, 201–02, 599 N.E.2d 1209, 1215–16 (1992).