**NORWEST BANK NEBRASKA, N.A., a Corporation, Appellee,**

v.

**PHILIPS REALTY CO., an Iowa Corporation, Philips Stores, Inc., and Henry Greenberg, et al., Appellants.**

**First National Bank of Council Bluffs, a Corporation, Defendant and Cross–Petitioner,**

v.

**Philips Realty Co., an Iowa Corporation, Philips Stores, Inc., and Henry Greenberg, et al., Defendants to Cross–Petition.**

No. 97–1231.

Supreme Court of Iowa.

April 28, 1999.

John M. French of Willson & Pechacek, Council Bluffs, for appellants.

Donald J. Pavelka, Jr. of Hansen, Engles & Locher, P.C., Council Bluffs, and Thomas M. Locher of Hansen, Engles & Locher, P.C., Omaha, Nebraska, for appellee.

LAVORATO, Justice.

The defendants in this case are Philips Realty Co., an Iowa corporation, Philips Stores, Inc., and Henry Greenberg. The defendants appeal from a district court ruling denying their motion for discharge of a mortgage foreclosure judgment. The judgment was entered against them and in favor of the plaintiff, Norwest Bank Nebraska, N.A. (bank), a corporation, roughly eleven years ago. The defendants claim the district court should have required the bank to give them proper credit on the judgment for the value of certain partnership interests as of the date of the judgment. The defendants also claim the district court should have required the bank to give them credit for the price the bank paid for the mortgaged property at a sheriff's sale as of the date of the purchase. The bank credited the purchase price as of the date of the sheriff's deed. We affirm in part, reverse in part, and remand with directions.

## I. Background Facts and Proceedings.

On March 24, 1988, the Iowa District Court for Pottawattamie County entered a decree awarding judgment against the defendants in favor of the bank for $844,-459.96 [hereinafter the Iowa judgment]. The Iowa judgment included interest at the rate of twelve percent per annum from and after December 31, 1987, costs of the action, and an attorneys' fee in the amount of $1500. The decree also foreclosed the bank's mortgage on the real estate securing the mortgage debt and ordered the real estate sold to satisfy the judgment.

On May 12, 1988, the bank purchased the real estate at a sheriff's sale for $320,-000 by bidding in that amount at the sale. On July 12, 1989, the bank received a sheriff's deed for the real estate and on that date gave the defendants credit on the Iowa judgment for the $320,000.

The bank transferred the Iowa judgment to the district court of Douglas County, Nebraska, for enforcement. On May 1, 1989, the bank filed a fraudulent conveyance action in Nebraska against Greenberg's daughter, Ilene Sue Bowers, and her husband, Bill R. Bowers. The bank sought to set aside certain conveyances Greenberg had made to his daughter. The two conveyances material to the present action included Greenberg's partnership interests in the 108th & "Q" Street Farm Partnership and in the Yorkshire Manor Apartments Partnership. Greenberg had assigned his interests in these two partnerships to his daughter on January 5, 1987. The Nebraska trial court set aside these conveyances as void and fraudulent and ordered Ilene to transfer the two partnership interests to the bank. The court authorized the bank to sell these interests to satisfy the bank's Iowa judgment.

The Bowers appealed to the Nebraska Supreme Court and invoked supersedeas proceedings to stay execution of the ruling against them. To establish the amount of the supersedeas bond, the bank apparently argued that the value of the 108th & "Q" Street Farm Partnership interest was $150,000 and the value of the Yorkshire Manor Apartments Partnership interest was $200,000. The Nebraska Supreme Court affirmed the trial court's ruling. Later, the Nebraska Supreme Court dismissed a second appeal filed by the Bowers. All appellate proceedings in Nebraska came to an end on January 5, 1995, with this dismissal. Thereafter, the bank sought to execute on the Nebraska judgment.

On December 30, 1995, the bank sold its interest in the Yorkshire Manor Apartments Partnership to the managing partner for $65,000 and on that date applied this amount as a credit to the Iowa judg-

ment. The interests of all partners in the 108th & "Q" Street Farm Partnership were sold at an auction. The bank received $85,311.72 as its share of the proceeds from the sale and applied that amount as a credit to the Iowa judgment.

In March 1996, the defendants filed in the original foreclosure action a motion "[f]or discharge of judgment; release and satisfaction and acknowledgment of judgment; an accounting; and judgment against plaintiff." Later, the defendants amended the motion asking the district court to take judicial notice of Nebraska law and to apply Iowa law.

In a brief in support of their motion, the defendants raised three issues. The first issue related to the amount of credit which the defendants alleged the bank should have given them on the Iowa judgment for the two partnership interest. The credit, the defendants argued, should have been the values assigned to the partnership interests in the Yorkshire Manor Apartments Partnership and the 108th & "Q" Street Farm Partnership in the supersedeas proceedings before the Nebraska Supreme Court: $200,000 and $150,000 respectively. Under the doctrine of judicial estoppel, the defendants argued that the bank should be prohibited from taking an inconsistent position between the Nebraska litigation in which the bank argued the values were $200,000 and $150,000 and the present Iowa litigation in which the bank only allowed a credit on the Iowa judgment for the amounts at which those interests were sold—$65,000 and $85,311.72. Additionally, the defendants asserted the bank should be estopped and precluded from granting them a credit on the Iowa judgment for any amount less than the $200,000 and $150,000 values.

The second issue related to the date on which the defendants alleged the bank should have given the defendants credit on the Iowa judgment for the $200,000 and $150,000 values. The defendants argued that under Nebraska law they should have been given credit for those values as of the date of the Iowa judgment, that is, March 24, 1988.

The third issue related to the date on which the defendants alleged the bank should have given the defendants credit on the Iowa judgment for $320,000, the amount the bank bid for the mortgaged property at the sheriff's sale. The bank gave the defendants credit for this amount as of the date the bank received the sheriff's deed. The defendants argued the bank should have given them credit as of the date of the sheriff's sale, which was fourteen months earlier.

Following a hearing, the district court overruled the defendants' motions. The court found that the bank had "properly and timely credited the defendants with cash received toward satisfaction of the Iowa judgment and properly accounted for the cash received and timely applied it to the satisfaction of the judgment." Additionally, the court ruled that "all of the defendants' theories offered for satisfaction of the [Iowa] judgment are not based upon any theory which is supported by Iowa law that is relevant to the satisfaction of a money judgment."

The defendants appealed, raising the same three issues they had raised in the district court.

## II. Scope of Review.

■ Because this proceeding was tried in equity, our review is de novo. Iowa R.App. P. 4; *see In re Receivership of Mt. Pleasant Bank & Trust Co.*, 526 N.W.2d 549, 553 (Iowa 1995). We give weight to the district court's factual findings; however, we are not bound by them. *Mt. Pleasant Bank*, 526 N.W.2d at 553.

## III. Whether the Bank Gave the Defendants Proper and Timely Credit For the Two Partnership Interests.

**A. The Nebraska law.** As mentioned, in January 1987, Greenberg assigned his interests in the 108th & "Q" Street Farm

Partnership and the Yorkshire Manor Apartments Partnership to his daughter, Ilene Sue Bowers. The bank filed suit against the Bowers in Nebraska to set aside that assignment as fraudulent. The bank was ultimately successful.

According to the defendants, Nebraska law required the bank to give the defendants credit equal to the value of the two partnership interests as of the time Greenberg assigned those interests to his daughter in 1987. These values, the defendants assert, were $200,000 and $150,000. In short, the defendants say that the district court's refusal to allow such a credit ignored Nebraska law and violated the fundamental principle requiring the courts of each state to give full faith and credit to out-of-state judgments.

In support of their contention, the defendants rely on Nebraska Revised Statutes section 36–708 and section 36–709 (1989), known as the Uniform Fraudulent Transfer Act (UFTA). Nebraska Revised Statutes section 36–708 provides in relevant part:

**Remedies of creditors.**

(a) In an action for relief against a transfer or obligation under the Uniform Fraudulent Transfer Act, a creditor, *subject to the limitations in section 36–709,* may obtain:

(1) *avoidance of the transfer* or obligation to the extent necessary to satisfy the creditor's claim;

(2) an *attachment or other provisional remedy* against the asset transferred or other property of the transferee. . . .

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(i) an *injunction* against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(ii) appointment of a *receiver* to take charge of the asset transferred or of other property of the transferee; or

(iii) any other relief that circumstances may require.

(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or *its proceeds.*

*Id.* (emphasis added).

The defendants point out that the remedies in this provision are the same remedies that the Nebraska trial judge applied and that the bank followed. But, the defendants claim, the Nebraska court and the bank failed to recognize or apply the limitations found in section 36–709, limitations to which the remedies in section 36–708 are subject.

Section 36–709 provides in relevant part:

**Defenses, liability, and protection of transferee.**

. . . .

(b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under subdivision *(a)(1) of section 36–708 [avoidance of the transfer], the creditor may recover judgment for the value of the asset transferred,* as adjusted under subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:

(1) The *first* transferee of the asset or the person for whose benefit the transfer was made; or

. . . .

(c) If the judgment under subsection (b) of this section is based upon the value of the asset transferred, *the judgment must be for an amount equal to the value of the asset at the time of the transfer . . . .*

*Id.* (emphasis added).

The defendants ask us to apply section 36–709 because the bank obtained from the Nebraska court a judgment avoiding and

setting aside the transfers to the Bowers pursuant to section 36–708(a)(1) without the court ever applying the protections of section 36–709. The defendants, therefore, want us to give them credit on the Iowa judgment for the value of the two partnership interests as of the time Greenberg transferred those interests to his daughter, Ilene, in 1987. Because these transfers occurred in 1987 and the Iowa judgment was entered against the defendants in March 1988, the defendants contend they are entitled to the credits—$200,000 and $150,000—as of March 1988.

▪ The short answer to this contention is that the UFTA did not apply to the transfers in question. At the time of the transfers in 1987, Nebraska was operating under the Uniform Fraudulent Conveyance Act (UFCA), Nebraska Revised Statutes section 36–601. The Nebraska Legislature repealed the UFCA in 1989 and replaced it with the UFTA. In the Bowers' appeal, the Nebraska Supreme Court held that the UFCA was the applicable law:

> On March 18, 1992, Norwest Bank filed a second amended petition in a consolidated lawsuit against Ilene Sue Bowers and her husband, Bill R. Bowers, pursuant to the Uniform Fraudulent Conveyance Act (UFCA), Neb.Rev.Stat. § 36–601 et seq. (Reissue 1988). The UFCA was repealed by the Legislature in 1989 and was replaced with the Uniform Fraudulent Transfer Act, Neb.Rev.Stat. § 36–701 et seq. (Cum.Supp.1992). *In this case, Norwest Bank's cause of action against the Bowers accrued in 1987. Statutes covering substantive matters in effect at the time of the transaction govern, not later enacted statutes.*

Norwest Bank Neb., N.A. v. Bowers, 246 Neb. 83, 83–84, 516 N.W.2d 623, 624 (1994) (per curiam) (citations omitted).

▪ Nevertheless, the defendants contend that, because the Nebraska trial court applied remedies under the UFTA which were not available under the UFCA, the UFTA should apply. In support of their contention, the defendants point out that

in the Nebraska litigation the Bowers asserted that under the UFCA the bank was not entitled to a money judgment against them; rather, the bank's remedy was limited to the property actually transferred. Yet, the defendants say, the Nebraska trial court rendered personal judgment against Ilene Sue Bowers for the proceeds from the sale of the two partnership interests in the event she had sold those interests. These contentions miss the mark because they ignore section 36–611 of the UFCA and cases interpreting the UFCA. Section 36–611 of the UFCA provides:

> In any case not provided for in sections 36–601 to 36–613 the rules of law and equity including the law of merchant, and in particular the rules relating to the law of principal and agent, and the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy, or other invalidating cause shall govern.

Neb.Rev.Stat. § 36–611.

Nebraska case law has interpreted this provision to mean that personal judgments can be rendered against the transferee of a fraudulent conveyance. *See Bank of Brule v. Harper*, 141 Neb. 616, 628, 4 N.W.2d 609, 616 (1942). Courts in other jurisdictions have reached the same conclusion. These courts have reasoned that the remedies established by the UFCA were simply alternatives to the legal and equitable remedies already available to a creditor. In addition, these courts have noted that the underlying objectives of the UFCA were to enhance, not to impair, a creditor's remedies. *See, e.g., Deyong Management, Ltd. v. Previs*, 47 Wash.App. 341, 735 P.2d 79 (1987).

▪ Moreover, we agree with the bank that section 36–709 of the UFTA does not even apply to the defendants in the present proceedings. This provision talks in terms of "[d]efenses, liability, and protection of transferee." The provision sets forth limitations upon any judgment entered against a *transferee*. The provision,

therefore, has nothing to do with the Iowa judgment rendered against the defendants in favor of the bank. Nor does section 36–709 have anything to do with how any money or property the bank may recover from the Bowers, as transferees, should be applied to the Iowa judgment. That brings us to the question of how a money judgment can be satisfied.

### B. The law generally regarding how a money judgment can be satisfied.

■■■ **1. Burden of proof and agreement to accept property in lieu of money.** A judgment debtor has the burden of proving that a money judgment has been paid. *In re Marriage of Farr*, 542 N.W.2d 828, 834 (Iowa 1996) ("Regardless of who files the satisfaction of judgment, it is the judgment debtor's burden to prove satisfaction, if challenged."). Ordinarily, a money judgment can only be satisfied by payment in money, unless the parties agree otherwise. 47 Am.Jur.2d *Judgments* § 1016, at 448–49 (1985). If the parties agree to substitute a different type of payment, the party claiming such an agreement must prove what was intended. *Id.* For example, "where defendants alleged that they had transferred real estate in satisfaction of a judgment, they were required to plead facts sufficient to show that the plaintiffs agreed to accept the property in lieu of money." *Id.; accord Heller v. Lee*, 130 Ill.App.3d 701, 85 Ill. Dec. 896, 474 N.E.2d 856, 857–58 (1985).

*Heller* presents a factual scenario similar to what happened here. In *Heller*, the trial court entered a money judgment in favor of the plaintiffs. The defendants appealed and the appellate court affirmed. The trial court granted the plaintiffs' motion to release the appeal bond. The bond consisted of a deed to real property and a certificate of deposit. The plaintiffs applied the certificate of deposit to the judgment and instituted garnishment proceedings against the defendants to recover the deficiency. The defendants then filed an action for a release from the judgment and for return of the excess bond. The trial court dismissed the action.

The appellate court affirmed the dismissal, stating:

> The defendants have alleged only that they expected the property transfer to satisfy the judgment. They have failed to allege facts which show that the plaintiffs shared that expectation. The appraised value of the property [alleged to be sufficient to satisfy the judgment] is speculative and irrelevant unless the defendants show that the plaintiffs agreed to accept the property at its appraised value instead of cash. The fact that the plaintiffs never indicated that the property transfer would not satisfy the judgment proves nothing. Similarly, the fact that the plaintiffs elected to petition for release of property instead of compelling a sheriff's sale is not evidence of an agreement to accept the property in satisfaction of the judgment. The plaintiffs were entitled to petition for release of the appeal bond in order to obtain partial cash payment via the certificate of deposit. The plaintiffs did not give up the right to recover the rest of the judgment in cash.

*Heller*, 85 Ill.Dec. 896, 474 N.E.2d at 858. The appellate court, however, did remand with directions to the trial court to sell the real estate, apply the proceeds to the judgment, and remit the excess, if any, to the defendants. *Id.*

■■■ **2. The merits.** Here, the Bowers were able to stay all proceedings once they appealed the fraudulent conveyance ruling. They were able to do so by assigning their interests in the two partnerships to the clerk of court for Douglas County. This was in 1992. The assignment precluded the bank from levying execution on these interests pending the appeal. The appeal was completed in January 1995. One month later, the clerk of court assigned the two partnership interests to the bank. On December 30, 1995, the bank was able to sell its interest in the Yorkshire Manor

Apartments Partnership to the managing partner for $65,000 and applied that amount to the Iowa judgment. The bank's interest in the 108th & "Q" Street Farm Partnership netted the bank $85,311.72 after the interests of the partnership were sold at an auction. The bank applied this amount to the Iowa judgment.

In the present proceedings, the defendants neither alleged nor proved that the bank agreed to accept the two partnership interests at the 1992 alleged values of $200,000 and $150,000 in satisfaction of the Iowa judgment. As *Heller* makes clear, such values are irrelevant unless the defendants show that the bank agreed to accept the partnership interests at those values instead of money. The defendants have made no such showing.

From the bank's perspective, there would be no good reason to accept the partnership interests at the 1992 alleged values in lieu of money; it was too risky to do so. There was no hard evidence that those partnership interests were worth that kind of money; the values were speculative at best. The values were mentioned only as a way to establish the amount of a supersedeas bond. There was little likelihood that the bank could realize any money on those partnership interests in a relatively short period of time. As it turned out, the bank had to wait roughly three years before it realized any money, and the amounts it realized were considerably less than the 1992 alleged values.

Absent any agreement by the bank to accept the partnership interests at the 1992 alleged values in lieu of money, the bank had every right to insist on money in satisfaction of the Iowa judgment. As mentioned, these values were therefore irrelevant as far as the present proceedings were concerned. Because the 1992 alleged values were irrelevant, defendants' theory of judicial estoppel must likewise fail.

### IV. Credit for the $320,000 Purchase Price.

■ As mentioned, on May 12, 1988, the bank bid $320,000 for the mortgaged property at a sheriff's sale and received a sheriff's certificate to the property. On July 12, 1989, the bank received a sheriff's deed to the property and on that date applied the $320,000 as a credit to the defendants on the Iowa judgment.

The defendants contend that they should have received credit for the sale on May 12, 1988, the date of the purchase. If the defendants are correct, the bank should recompute the interest during the fourteen-month period between the purchase date and the date of the sheriff's deed and give the defendants credit for the reduction in interest. For reasons that follow, we agree with the defendants' contention.

A purchaser at a foreclosure sale receives a sheriff's deed if the property sold is not subject to redemption. Iowa Code § 626.95 (1987). If such property is subject to redemption, the sheriff must execute

> a certificate, containing a description of the property and the amount of money paid by such purchaser, and stating that, unless redemption is made within one year thereafter, or such other time as may be specifically provided for particular actions according to law, the purchaser or the purchaser's heirs or assigns will be entitled to a deed for the same.

*Id.*

Ordinarily, when the sheriff sells property to satisfy a judgment, the buyer must pay the purchase price in cash to the sheriff. The sheriff, in turn, transfers the money to the clerk of court. The clerk applies the money to the satisfaction of the judgment and forwards the money to the judgment creditor. When the sale is completed the judgment is thereby reduced by the amount of money realized in the sale. The purchaser's payment, the clerk's satisfaction of the judgment for the amount of payment, and the clerk's transfer of the payment to the creditor occur contemporaneously with the sale. Thus, the judgment

debtor is entitled to a satisfaction of the judgment for the amount of the payment as of the date of the sheriff's sale.

If the buyer of the property is the judgment creditor, the same process applies. But, in the interest of practicality, the judgment creditor does not pay the sheriff cash. (If the creditor did pay cash, the clerk would return the cash to the creditor after satisfying the judgment for the amount the creditor paid.) Instead, through a bookkeeping entry, the clerk simply credits the judgment with the amount of the creditor's bid thereby reducing the judgment by the amount of that bid. This is exactly what happened here. The clerk's docket in the foreclosure action shows that on May 12, 1988—the date of the sheriff's sale—the clerk entered partial satisfaction of the judgment in the amount of the bank's $320,000 bid price. The bank should therefore have given the defendants credit on the Iowa judgment for $320,000 as of May 12, 1988, rather than on July 12, 1989.

## V. Disposition.

We have considered all of the defendants' contentions and arguments whether or not we have addressed them. Those we have not addressed lack merit.

We conclude the bank gave the defendants proper and timely credit on the Iowa judgment for the two partnership interests. The bank, however, failed to give the defendants timely credit for the bank's $320,000 bid price. We reverse on this issue and remand for recomputation of interest and resulting reduction on the Iowa judgment.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

HARRIS, J., takes no part.