Kathleen M. JACKSON, Appellee,

v.

Janice SCHRADER, as Executor of the Estate of Martha C. Schrader, and Janice Schrader, Individually, Appellant.

No. 01–2056.

Supreme Court of Iowa.

Nov. 13, 2003.

Rehearing Denied March 16, 2004.

Gregory Siemann of Green, Siemann & Greteman, Carroll, for appellant.

Russell Wunschel of Wunschel Law Firm, P.C., Carroll, for appellee.

CARTER, Justice.

Janice Schrader, the daughter of Martha Schrader, deceased, who enjoyed a confidential relationship with her mother, appeals from a decree requiring her to reimburse Martha's estate for sums placed in joint tenancy with Janice or gifted to Janice during the time that the confidential relationship existed. Janice's sister, Kathleen, cross-appeals urging that a larger reimbursement of Martha's estate should have been ordered.

After reviewing the record and considering the arguments presented, we conclude that the standard for rebutting a presumption of undue influence that was stated in *In re Estate of Todd,* 585 N.W.2d 273, 275 (Iowa 1998), is unreasonably demanding and, if followed, may cause the invalidation of bona fide transfers to a dominant party in a confidential relationship. In applying a more appropriate standard, which focuses on whether the end result was the product of undue influence, we conclude on our de novo review that the evidence fails to show that many of the challenged transactions were the product of undue influence. The district court's decree requiring reimbursement of Martha's estate is reversed in part and affirmed in part. With respect to the additional transactions of which Kathleen complains on her cross-appeal, we affirm the judgment of the district court.

Kathleen and Janice are the children of Elmer and Martha Schrader who were married for more than fifty years. At least as early as 1973, substantial animosity developed between Kathleen and the other family members. Kathleen on two occasions sued Elmer and Martha for monies owed on a note and for conversion of personal property. When Elmer and Martha entered Kathleen's home during her absence, she caused them to be arrested. Following her father's death, Kathleen brought an action asserting a claim to certain real and personal property. Martha later sued Kathleen for forcible entry and detention of real property.

Elmer and Martha executed wills on April 19, 1974. The will of each gifted $1 each to Janice and Kathleen and designated the surviving spouse as the residual beneficiary. Each will provided that, if Elmer and Martha died in a common disaster, all property bequeathed and devised to a surviving spouse should go to

Janice. In 1982 Elmer and Martha made Janice the contingent beneficiary on a life insurance policy. After Elmer's death, this was changed so as to make Janice the sole beneficiary. Elmer died in August 1992. At this time, he and Martha held nearly all of their property in joint tenancy. Ten certificates of deposit totaling $189,235 were held in joint tenancy. These certificates were designated as payable to Janice on the death of the surviving joint tenant. Prior to his death, Elmer had made gifts totaling $28,000 to Janice and none to Kathleen.

Shortly following Elmer's death, an attorney advised Martha that, if she disclaimed certain property, she could effect a substantial tax savings in the next generation. She learned that this would result in half of her property passing to Kathleen. She rejected the idea for that reason. The attorney also advised Martha at this time that, except for the limited situation involving simultaneous death, her will did not provide for a gift over in the event her spouse did not survive her. He advised her that the consequence of this omission would be that her property would pass equally to Janice and Kathleen on her death. Finally, in that meeting, the attorney counseled Martha with respect to the tax benefits of annual gifting of $10,000 to her children. The attorney testified at trial that Martha was receptive to this idea with respect to Janice but not as to Kathleen.

Sometime thereafter, Martha, together with Elmer's brother, Ray, went to a different attorney for purposes of making a new will. She advised that attorney that she was inclined to give Kathleen only $1.00, but that in order to avoid litigation she would bequeath to her the sum of $100,000. Martha indicated that the balance of her property was to go to Janice. On September 29, 1992, a newly drafted will reflecting those terms was executed by Martha. The attorney drafting the will testified that she appeared to be fully competent and understood the terms of the will as he went over each of the paragraphs with her. They were alone at the time of this discussion. At this same meeting, the attorney prepared a power of attorney authorizing Janice to act as attorney in fact for Martha in the carrying out of her affairs.

Martha made eight annual gifts of $10,000 to Janice between December 10, 1992, and January 4, 1999. The first two checks were signed by Martha, and the last six checks were signed "Martha Schrader by Janice M. Schrader POA." Prior to Martha's death, the certificates of deposit that had been jointly owned with Elmer and were payable on death to Janice matured. Subsequently, new certificates of deposit totaling approximately $399,000 were purchased by Martha and placed in joint tenancy with Janice. Martha died on July 17, 1999.

In 1986 Martha had been diagnosed with a brain tumor. The area of the brain affected involved speech, memory, and comprehension of oral and written communication. In 1990 radioactive seeds were implanted in the tumor, but her problems continued, and in addition, she developed a seizure disorder. Martha had a second surgery to implant radioactive seeds in April of 1994.

On April 7, 1992, Martha was tested by a clinical psychologist. She scored in the impaired range across the board on all tests, and her full scale IQ was 64, in the mild mental retardation range. The clinical psychologist testified at trial that Martha had a significant global impairment and would require assistance in supervision on a daily basis for her own safety. Other doctors testified that Martha suffered from dementia. Although one doctor

testified that she had the mental capacity to conduct her ordinary financial affairs, other doctors testified that she lacked such capacity.

Kathleen contested Martha's will of September 1992. The jury found that Martha was not competent to execute a will at that time. The jury also found that the will was the product of undue influence. A motion for judgment notwithstanding the verdict was granted with regard to the undue-influence finding but denied with respect to the finding of lack of competency. The court of appeals affirmed the district court on the issue of Martha's competency to execute a will and did not reach the issue involving undue influence.

In addition to contesting Martha's will, Kathleen also challenged several inter vivos transactions between Martha and Janice in this equitable proceeding. After hearing evidence, the district court expressed the view that Martha was not shown to have been incompetent to execute the challenged transactions until sometime near the end of 1996. The court observed in this regard:

> Martha was not an average late Twentieth Century American woman. She apparently functioned quite well in her own role, but she had little desire or need to expand beyond that role. There was probably no time in her life when she would have performed well in fifteen-minute interviews with a psychiatrist or in the type of testing which was conducted during her illness. To a substantial extent she was tested with respect to matters which were irrelevant to her life. The court therefore gives the doctors' opinions less weight than they would have in most cases.
>
> There are undoubtedly many kinds of financial transactions which Martha would have found it difficult to understand. The transactions at issue in this

case, however, were not novel or complicated. They involved matters which were part of Martha's life and which were important to her. She was able to understand them and to decide what she wanted to do with respect to them.

> Martha's illness caused some variation in her mental functioning. The jury found that she lacked testamentary capacity at the time when she executed her will. Her mental functioning was impaired for a short time before her last surgery. She had the mental capacity to engage in ordinary and familiar financial transactions, however, during most of the time from her husband's death until the end of 1996. The plaintiff has not shown that she lacked such mental capacity at any specific time during that period.

On the matter of the alleged undue influence, the court concluded that a confidential relationship did exist between Martha and Janice, which rendered Martha dependent on Janice's judgment. In so concluding, the court stated:

> The defendant is the daughter who stayed at home, worked for her parents from an early age and served her parents throughout the rest of their lives. As a result, her relationship with her parents was very close. After Elmer Schrader died, Martha relied on the defendant for assistance in every aspect of her life. The defendant did not seek to dominate Martha, but she became the dominant person in the relationship because Martha needed her and trusted her.

Although the court intimated that the evidence showed a lack of a disposition by Janice to unduly influence Martha and a result unaffected by undue influence, it concluded that the standard for rebutting the presumption of undue influence that arises from a confidential relationship, as

set forth in *Todd,* 585 N.W.2d at 275, also required a showing that the dependent person in the relationship was not susceptible to undue influence and that the dominant person in the relationship lacked opportunity to influence the transaction. Because the existence of a confidential relationship presupposes the presence of those two conditions, the district court concluded that under the *Todd* criteria the presumption of undue influence was not rebutted.

As a result of its determination on undue influence, the court concluded that the value of the joint-tenancy-property interests created during the confidential relationship must be returned to the estate by Janice together with interest. Janice was also required to reimburse the estate for the value of eight annual $10,000 cash gifts to her, gifts of jewelry and a cameo, and gifts made to Tom and Terry Dohse in the sum of $5500 from Martha's funds. All of the latter transactions occurred during the confidential relationship.

Certain deductions from the amounts to be reimbursed were allowed by the court. The value of the certificates of deposit owned jointly by Elmer and Martha and made payable to Janice on death of the surviving joint tenant was subtracted from the joint-tenancy property for which reimbursement was required. It was the court's theory that those certificates were simply rolled over into new certificates of title owned jointly by Martha and Janice.

The court also concluded that Janice was entitled to retain the proceeds of a life insurance policy of which she had been made beneficiary by Martha because this was a continuation of the beneficiary status that Janice had enjoyed prior to the existence of the confidential relationship. Also, because Janice had invested $3000 of her own funds in a jointly owned automobile, the court reduced the amount of reimbursement for the car's value by that amount. Under the district court's decree, Janice was required to reimburse Martha's estate nearly $550,000. An existing loan to the estate from Janice in the sum of $355,345.28 was set off against that sum.

## I. *Burden of Proof.*

 Because the case was tried by equitable proceedings in the district court, our review of the facts on appeal is de novo. Iowa R.App. P. 6.4; *see In re Receivership of Mt. Pleasant Bank & Trust Co.,* 526 N.W.2d 549, 553 (Iowa 1995). We give weight to the district court's factual findings; however, we are not bound by them. *Mt. Pleasant Bank,* 526 N.W.2d at 553.

## II. *Respective Burdens of Proof in Actions to Avoid Inter Vivos Transfers as a Result of Alleged Undue Influence.*

The respective burdens of proof placed on the parties in actions to avoid inter vivos transfers as a result of alleged undue influence were thoroughly reviewed in *Todd,* 585 N.W.2d 273 (Iowa 1998). That case involved a challenge to both a will and a series of inter vivos transfers as the result of alleged undue influence. The jury's verdict was for the contestants as to both the will and the inter vivos transfers.

The appellant challenged the district court's instructions to the jury on the burden of proof for avoiding an inter vivos transfer. We held that, although the burden of proof in assailing the will was by a preponderance of the evidence, the burden of proof in assailing the inter vivos transfers was by clear, convincing, and satisfactory evidence. *Todd,* 585 N.W.2d at 276. Based on that conclusion, we affirmed that portion of the judgment setting aside the will but granted a new trial on the challenge to the inter vivos transfers.

In discussing the respective burdens of proof, we stated in *Todd:*

> To summarize, contestants seeking to set aside a will based on undue influence carry the burden of proving the essential elements of the action by a preponderance of the evidence. Persons seeking to set aside inter vivos transfers carry a higher burden of proving their cause of action by clear, satisfactory and convincing evidence.

*Id.* at 277 (footnote omitted). We further stated:

> Where a confidential relationship is found to exist, and inter vivos conveyances are challenged, the burden of proof shifts to the benefited parties to prove—by clear, satisfactory, and convincing evidence—their freedom from undue influence.

*Id.* (footnote omitted). Following this reference to confidential relationships, we added a footnote in *Todd,* which declared:

> Four elements must be proven to rebut a presumption of undue influence being exerted by a person in a confidential relationship with the grantor.... [T]he grantee must prove (1) the grantor's lack of susceptibility to undue influence; (2) the want of opportunity to exercise such influence and effect the wrongful purpose; (3) the lack of a disposition to influence unduly for the purpose of procuring [an] improper favor; and (4) a result clearly unaffected by undue influence.

*Todd,* 585 N.W.2d at 273 n. 5. As authority for this proposition, we relied on the court of appeals decision in *In re Estate of Baessler,* 561 N.W.2d 88, 92 (Iowa Ct.App. 1997).

It appears without dispute in the present case that a confidential relationship existed between Martha and Janice at the time of the inter vivos transactions that were voided by the district court. Although the district court intimated that Janice was not disposed to influence Martha unduly and that the result did not appear to be the product of undue influence, it believed that the first two conditions of the four-pronged test in *Todd,* i.e., lack of susceptibility and want of opportunity, had not been rebutted. The district court commented, and we agree, that because those two conditions form the basis for a confidential relationship the effect of requiring all four of the stated propositions to be rebutted is to render the presumption conclusive.

Our acceptance of the court of appeals' criteria in *Baessler* was not necessary to the decision in *Todd.* Upon further reflection, we are convinced that the *Baessler* criteria provide an unrealistic standard for rebutting the presumption of undue influence that arises from a confidential relationship. We are satisfied that, notwithstanding the susceptibility of a grantor to undue influence and the opportunity of a grantee to exercise such influence, it is possible to have an inter vivos transfer between such parties that is not the product of undue influence.

■ In reaching this result, we draw in part on our legislature's directives with regard to the public-policy implications of fiduciary self-dealing in its enactment of the Probate Code. Iowa Code section 633.155 recognizes that self-dealing by a fiduciary in a probate setting may occur if approved by court order. *See In re Guardianship of Jordan,* 616 N.W.2d 553, 558 (Iowa 2000) (recognizing self-dealing by fiduciaries is permissible if approved by court on finding of an adequate reason for the transaction). We are similarly satisfied that all transactions between persons in a confidential relationship should not be prohibited in an inter vivos setting. That

appears to have been the rule under our holdings prior to *Todd.*

In *First National Bank v. Curran,* 206 N.W.2d 317 (Iowa 1973), we stated the rule for rebutting the presumption of undue influence arising from a confidential relationship as follows:

> When a confidential relationship is shown, the person in whom the trust is reposed is not merely required to go forward with the evidence; he has the burden of persuasion to uphold the transfers. His burden is heavy. He must produce "clear, satisfactory and convincing evidence." *He is required to prove "entire good faith on his part and free, voluntary, and intelligent action on the part of the grantor."*

*Curran,* 206 N.W.2d at 322 (emphasis added) (citations omitted). Similarly, in *Merritt v. Easterly,* 226 Iowa 514, 284 N.W. 397 (1939), we stated the rule as follows:

> Since that [confidential] relationship existed between the deceased and the appellant, the burden was upon the appellant to rebut the presumption of overreaching on his part, and to affirmatively establish *that in his acquisition of property, in the transaction in controversy, he took no advantage of the deceased by reason of their relationship, but that she acted voluntarily with freedom, intelligence and a full knowledge of all of the facts.*

*Merritt,* 226 Iowa at 530, 284 N.W. at 405 (emphasis added).

■ We believe that the statements which we have italicized from the *Curran* and *Merritt* cases more accurately reflect the correct standard for rebutting the presumption of undue influence that flows from a confidential relationship than our dictum in *Todd.* Consequently, we hold that the rule for rebutting the presumption of undue influence arising from a confidential relationship only requires the grantee of a transaction to prove by clear, satisfactory, and convincing evidence that the grantee acted in good faith throughout the transaction and the grantor acted freely, intelligently, and voluntarily. That is the standard which we apply in considering the transactions that have been challenged in the present case.

■ There are three categories of transactions that are affected. The first category includes the transactions in which Martha demonstrated a clear propensity outside of the confidential relationship to reward Janice on her death vis-à-vis that type of transaction. It has been shown by clear, satisfactory, and convincing evidence that those transactions were not the product of undue influence by Janice and fairly reflected Martha's free-will determination. These transactions include all of the joint-tenancy property, including bank accounts, investment accounts, and certificates of deposit. They also include the life insurance and annuities. They do not include the gifts to Tom and Terry Dohse, the gifts to Janice of jewelry and a curio cabinet, or the profit on the sale of a tractor. As to the latter transactions, there is no specific proof of Martha's wishes existing outside of the confidential relationship, and the presumption of undue influence has not been rebutted.

■ The third category of property includes the annual gifting of $10,000 to Janice. As to those transactions, we believe it has been established by clear, convincing, and satisfactory evidence that they were made pursuant to a course of estate planning initiated of Martha's own volition and carried out with Janice's assistance consistent with Martha's wishes. These gifts have not been shown to have been the product of undue influence by Janice.

## III. *The Mental Competency Issue.*

 Because the district court decided the case primarily in Kathleen's favor, based on the claims of undue influence, it did not discuss in detail the claim that Martha lacked the necessary mental competency to carry out the challenged inter vivos transactions. Dispositive of this issue, however, is the finding of the district court, previously discussed, that from the time of her husband's death Martha had the mental capacity to engage in ordinary and familiar financial transactions such as those that are being contested by Kathleen. Based on that premise, the district court properly disposed of the competency issue on the ground that Kathleen had failed to show that Martha lacked mental capacity at any specific time during that period. We are in agreement with those findings and reject the arguments based on alleged lack of mental competency.

 Kathleen urges that our conclusion must be otherwise because, at all times material to the challenged transactions, Janice was acting under a power of attorney executed by Martha on the same day that the jury in the will-contest case found her to be lacking in the mental competency required to make a valid will. Because the level of competency required for inter vivos transactions is even higher than that required for testamentary dispositions, *see In re Estate of Faris,* 159 N.W.2d 417, 420 (Iowa 1968), Kathleen urges that the power of attorney must be found to be invalid under principles of issue preclusion. Assuming that the power of attorney is found to be invalid on that theory, that would not ipso facto invalidate the challenged inter vivos transactions. The absence of an express agency relationship does not preclude the creation of an implied agency relationship. We have recognized that

"[t]he relation of agency does not depend upon an express appointment and acceptance thereof, but it may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case."

*Greenlease–Lied Motors v. Sadler,* 216 Iowa 302, 307, 249 N.W. 383, 386 (1933)(quoting 2 C.J. 435 § 32). To establish an implied agency

"[d]irect evidence is not indispensable,—indeed, frequently is not available,—but instead, circumstances may be relied on, such as the relation of the parties to each other and their conduct with reference to the subject-matter of the contract."

*State v. Reynolds,* 209 Iowa 543, 546, 228 N.W. 283, 285 (1929)(quoting 21 Ruling Case Law 820). We find that all of the transactions challenged in this case were carried out under circumstances that support a finding that an implied agency relationship existed under which Janice was acting as Martha's agent with her approval and consent.

## IV. *The Issues on Cross–Appeal.*

Kathleen's cross-appeal involves the certificates of deposit, which the district court concluded were the result of rolling over previously existing certificates of deposit payable to Janice on death. Kathleen urges that it is impossible to trace the funds so as to sustain the conclusion of the district court. We need not answer this question because, like the other joint-tenancy property, we conclude that these certificates of deposit were placed in joint tenancy as a result of Martha's exercise of her free will and the transactions were not influenced by Janice.

## V. *Conclusion.*

That portion of the district court's decree requiring Janice to reimburse the estate for gifts to Tom and Terry Dohse, gifts to Janice of jewelry and a curio cabi-

net, and the profit from the sale of a tractor is affirmed. The district court's decree is reversed with respect to any other sums for which reimbursement of the estate was required. The portion of the district court's decree requiring that Martha's estate be made the beneficiary of the annuities is also reversed.

The amount of reimbursement by Janice shall be as follows (the figures include interest as computed by the district court):

| | |
|---|---|
| Gifts to Tom and Terry Dohse | $5971.36 |
| Gifts of jewelry to Janice | $4039.15 |
| Gift of a curio to Janice | $1083.63 |
| Profit realized on sale of tractor | $2593.70 |

These items totaling $13,687.84 shall be reconciled with amounts to be recouped by Janice from the estate for her satisfaction of the district court's original degree pendente lite. See *Schwennen v. Abell*, 471 N.W.2d 880, 883–85 (Iowa 1991). Costs of appeal are assessed twenty percent to appellant and eighty percent to appellee.

**AFFIRMED IN PART AND REVERSED IN PART ON APPEAL; AFFIRMED ON CROSS–APPEAL.**

All justices concur except WIGGINS, J., who takes no part.