**IN THE COURT OF APPEALS OF IOWA**

No. 18-1499
Filed September 11, 2019

**IN THE MATTER OF THE GUARDIANSHIP AND CONSERVATORSHIP OF SYLVIA CHOTT,**

**KATHERINE MYER,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

        Katherine Myer appeals the district court ruling finding she violated her obligations to her mother Sylvia Chott as her mother's power of attorney by withdrawing funds from the mother's bank account and ordering her to return the money and pay attorney fees and court costs.  **AFFIRMED.**

        Eric G. Borseth of Borseth Law Office, Altoona, for appellant.

        Chad W. Eichorn of Pearson Bollman Law, West Des Moines, for appellee.

        Considered by Potterfield, P.J., and Doyle and Mullins, JJ.

**POTTERFIELD, Presiding Judge.**

Katherine Myer appeals the district court's decision ordering her to return $29,597.29 to her mother, Sylvia Chott. Katherine transferred the money from Sylvia's bank account to her own while she had a power of attorney for Sylvia. On appeal, Katherine argues the district court erred by: (1) reviewing the transfer of funds under Iowa Code section 633B.116 (2017) as an agent's use of a power of attorney; (2) finding Katherine did not act in good faith by transferring the money from Sylvia's bank account to her own and that Sylvia did not act intelligently and voluntarily when making the transfer; and (3) assessing attorney fees and court costs against her. Katherine further argues Kenneth, her brother and the current holder of Sylvia's power of attorney, should pay her attorney fees for this appeal. In response, Sylvia asks that we affirm the award of the district court and award her appellate attorney fees.

## I. Background Facts and Proceedings

This case involves three family members: siblings Katherine Myer and Kenneth Chott-Olsen and their mother Sylvia Chott. At the time of trial, Katherine was sixty-six years old and lived in West Des Moines; Kenneth was seventy and lived in Indianapolis, Indiana. Sylvia was ninety-four and lived in Indianapolis as well. Sylvia had lived in Illinois for many years and moved to West Des Moines in 2009 to be closer to Katherine and her husband, Chuck. She moved to Indianapolis in December 2017 after the events leading to this litigation.

Between 2009 and September 2017, Katherine and Chuck helped take care of Sylvia. They arranged for her to live in an apartment in the same apartment complex Katherine and Chuck lived in. Sylvia became dependent on

Katherine and Chuck in 2016 after she lost her driver's license and was diagnosed with dementia or early Alzheimer's. She relied on Katherine and Chuck to take her grocery shopping and otherwise help her each day.

In March 2010, Sylvia gave Katherine a durable power of attorney. The power of attorney named Kenneth as an alternate. It gave Katherine the authority to manage Sylvia's finances and perform banking activities on Syliva's behalf, including the power "to receive and endorse checks and other negotiable paper, deposit and withdraw funds (by check or withdrawal slips) that I now have on deposit or to which I may be entitled in the future." It directed Katherine to "exercise all powers in [Sylvia's] best interest and for [Sylvia's] welfare." Katherine was unaware of the power of attorney until around 2015 and maintains she never used it. Katherine testified at trial that she never paid Sylvia's bills. Instead, she only kept track of Sylvia's bank account online to make sure Sylvia had not accrued overdraft fees or gave too much money to charity. Katherine emphasizes on appeal that Sylvia was always protective of her finances and did not want other people managing them for her.

The transaction at issue here occurred on September 19, 2017. Katherine testified Sylvia became worried about leaving her family with a large bill from Medicaid if she had to go on long-term care and insisted on giving some of her money to Katherine and Kenneth. To that end, Katherine devised a plan to transfer money from Sylvia's bank account to Kenneth and herself. Katherine drafted a letter expressing Sylvia's desire to transfer $29,597.29 to Katherine "for services rendered that allow [Sylvia] to continue living apart from assisted care."

Katherine calculated the amount of compensation.[1]  On September 17, 2018, Katherine and Sylvia went to Sylvia's bank, got the letter notarized, and transferred the money to Katherine's bank account.  Katherine never consulted an attorney, accountant, or financial professional about the prudence of making the transfer or its effect on Sylvia's eligibility for Medicaid if she went on long-term care before making the transfer.

Katherine and Sylvia did not discuss the transfer of funds at all until Kenneth came to visit on October 10.  Kenneth did not agree with the decision to transfer the money and accused Katherine of attempting to take Sylvia's money and put her in an assisted living home.  Sylvia did not speak to Katherine at any point during the argument.  The next day, Sylvia called Katherine and asked her to return the money, which Sylvia characterized as a gift.  Katherine refused.  She and Chuck had given some of the money to their children and spent some of it themselves.  Katherine ended the call and went to Sylvia's apartment, where she found Kenneth and Sylvia waiting for her.  Kenneth again accused Katherine of stealing Sylvia's money.  The two argued again, and Katherine left.  On October 12, Katherine and Chuck drafted a letter relinquishing Katherine's power of attorney to Kenneth.  The letter noted Katherine "was responsible for [Sylvia's] well-being, finances, and care-taking" up until that day.  Katherine and Chuck had the letter notarized and delivered it to Sylvia the same day.

---

[1] Katherine calculated the figure by taking Sylvia's total savings ($72,194.58), subtracting $13,000 from that amount to keep some money in Sylvia's savings account and transfer $1000 to her checking account, and then divided the remaining money ($59,194.58) in two, to split it equally between Katherine and Kenneth.  Kenneth never accepted his share.

Sylvia filed the petition on February 16, 2018, requesting review of Katherine's actions as an agent under Iowa Code section 633B.116(b).

Following a trial, the district court determined Katherine owed fiduciary duties to Sylvia when Katherine formulated the plan to transfer the money and Katherine had the burden to prove by clear, satisfactory, and convincing evidence she did not breach her fiduciary duties. The district court determined a confidential relationship existed between Katherine and Sylvia such that Katherine had the burden to prove by clear, satisfactory, and convincing evidence that (1) she had acted entirely in good faith by transferring the money and (2) Sylvia acted freely, voluntarily, and intelligently when making the transaction. The district court held Katherine had not met any of these burdens and ordered her to return the transferred money and pay attorney fees and court costs. Katherine appeals.

## II. Standard of Review

The parties agree actions under chapter 633B are tried in equity and are reviewed de novo. Iowa R. App. P. 6.907. *Inter vivos* transfers are also reviewed de novo. *In re Herm's Estate*, 284 N.W.2d 191, 199 (Iowa 1979). On de novo review, "[w]e give weight to the fact-findings of the trial court but are not bound by them." *Id.* "Of course this also applies to our review of trial court's finding of the existence of a confidential relationship." *Id.*

## III. Discussion

On appeal, Katherine challenges the application of chapter 633B to her conduct, the court's determination that she did not act in good faith, the court's determination that Sylvia did not act intelligently and voluntarily when making the

transfer, and the court's award of attorney fees and court costs. We consider each of her arguments in turn.

### a. Application of Chapter 633B

Katherine argues the district court was wrong to review her actions under chapter 633B because she never accepted the power of attorney.[2] Under chapter 633B, "a person accepts their appointment as an agent under a power of attorney by exercising authority or performing duties as an agent or by any other assertion or conduct indicating acceptance." Iowa Code § 633B.113. Katherine correctly asserts no evidence in the record indicates she used any of the powers described in the power of attorney and the power of attorney imposed no affirmative duties on Katherine other than to use it for Sylvia's benefit and in good faith. But acceptance of a power of attorney is not limited to use or performance of duties imposed. *See id.* Katherine could have also accepted the power if the record shows she engaged in "any other assertion or conduct indicating acceptance." *Id.* Neither "assertion" nor "conduct" are defined in chapter 633B, so we give them their plain meaning. *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Mobil Oil Corp.*, 606 N.W.2d 359, 364 (Iowa 2000) ("[W]e give the words their plain and ordinary meaning when not specifically defined by the legislature or when there is no particular legal definition of the term.").

---

[2] Chapter 633B is the codification of the Iowa Uniform Powers of Attorney Act, 2014 Iowa Acts 1078. While the Act was adopted in 2014, it applies to powers of attorney created before July 1, 2014, so long as the act in question occurred after that date. *See* Iowa Code § 633B.403(1), (4) ("An act completed before July 1, 2014, shall not be affected by this chapter."). The planning and performance of the transaction here happened in September 2017. As a result, the fact that the power of attorney was created before the Act was adopted does not make chapter 633B inapplicable.

From our review of the record, Katherine accepted the power of attorney before the September 2017 transaction. In her answer to the petition, Katherine admitted that she was appointed power of attorney some time before 2016. As for the September 2017 transfer, the answer also states Katherine's "actions were taken upon the direction of Sylvia Chott and consistent with her responsibilities as Attorney in Fact." On direct examination, Katherine admitted she took action consistent with the power of attorney, as she offered to pay Sylvia's bills for her:

> Q. When did you become aware of [the power of attorney]? A. I think two or three years ago. And it was one of those things, okay, fine.
> Q. What do you mean? A. I wasn't going to do anything with it.
> Q. Did you ever use it? A. No, I never did. Not even to pay—to sign checks. *I had asked Mom one time if she wanted me to pay her bills online*, and she said, No, I want to do that myself. I said, Okay. I never—*I just never used it. It was just not necessary.*

(Emphasis added.)

Finally, the October 12 letter relinquishing the power of attorney states "Until this date, I was responsible for [Sylvia's] well-being, finances, and care-taking." Taken together, this evidence shows Katherine made "assertion[s] or conduct indicating acceptance" before the September 2017 transfer and that Katherine was Sylvia's agent under chapter 633B before that time. *Id.*; *see also* Iowa Code § 633B.102(1) ("'*Agent*' means a person granted authority to act for a principal under a power of attorney, whether denominated an agent, attorney in fact, or otherwise."). We conclude the district court was not wrong to evaluate Katherine's conduct under chapter 633B.

### b. Review of the *Inter Vivos* Transfer

Next, Katherine argues the district court improperly overturned the transfer by erroneously concluding she had not met her burden to prove she acted in good faith and Sylvia acted freely, voluntarily, and intelligently when making the transfer. Katherine does not dispute the district court's determination that she and Sylvia had a confidential relationship. If a confidential relationship exists, the transfer "is presumptively fraudulent and therefore presumptively the product of undue influence." *Mendenhall v. Judy*, 671 N.W.2d 452, 454 (Iowa 2003). Once a confidential relationship has been established, the burden shifts to the grantee to prove by clear, satisfactory, and convincing evidence the she acted in good faith throughout the transaction and grantor acted freely, voluntarily, and intelligently when she made the transfer. *Jackson v. Schrader*, 676 N.W.2d 599, 605 (Iowa 2003). "We have recognized that this 'rule is particularly applicable where one of the parties has a dominating influence over the other by reason of the affection, trust, and confidence of the latter in the former.'" *Mendenhall*, 671 N.W.2d at 445 (quoting *Estate of Herm v. Henderson*, 284 N.W.2d 191, 200 (Iowa 1979)). "Evidence is clear, convincing, and satisfactory where there is no serious or substantial uncertainty about the conclusion to be drawn from it." *Id.* at 454. "It is a heavy burden." *Miller v. Eisentrager*, No. 09-0596, 2009 WL 5126118, at *2 (Iowa Ct. App. Dec. 30, 2009) (citing *Jackson*, 676 N.W.2d at 605).

On de novo review, we conclude Katherine has not met either burden. To meet her burden of proving she acted in good faith, Katherine relies mainly on

her own testimony. She testified that Sylvia insisted on giving her the money, despite her informing Sylvia that doing so was unnecessary. On cross-examination, Katherine characterized the transfer as a reimbursement for services rendered. She did not explain why Kenneth was to receive an equal amount from Sylvia given he had never provided for Sylvia's care and had incurred no costs to be reimbursed for. Her characterization of the transfer is also contradicted by Sylvia, who testified she understood the transfer to be a gift that she could get back whenever she wanted. Katherine further admitted she told Sylvia the money would always be available if Sylvia needed it. Despite this statement, Katherine transferred some of the money to her children soon after receiving it from Sylvia then declined to give any of the money back once Sylvia requested its return.

Katherine also failed to meet her burden to show Sylvia acted freely, voluntarily, and intelligently. Sylvia was heavily reliant on Katherine and suffered from dementia or Alzheimer's when the transfer occurred. As noted before, Katherine told Sylvia the money would always be available to her after the transfer occurred. There is no evidence on the record that Katherine ever explained to Sylvia she intended to gift some of the money to her children and that at least some of the money would not be available to her soon after the transfer was completed. The record also shows Sylvia was never informed about the potential consequences the transfer would have on her eligibility for Medicaid. On this record, we agree with the district court and conclude Katherine has not met her burden.

### c. Attorney Fees

Finally, Katherine argues the district court erred by ordering her to pay Sylvia's attorney fees and court costs and that Kenneth should pay her appellate attorney fees. Iowa Code section 633B.116(3) authorizes the district court to award "reasonable attorney fees and costs to the prevailing party." The trial court reviewed the fee affidavit filed by Sylvia's attorney and determined awarding Sylvia $7000 was "necessary and reasonable." "The district court is considered an expert in what constitutes a reasonable attorney fee." *Boyle v. Alum-Line, Inc.*, 773 N.W.2d 829, 832 (Iowa 2009) (quoting *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 733 (Iowa 2005)). "We review the court's award of attorney fees for an abuse of discretion." *Id.* "Reversal is warranted only when the court rests its discretionary ruling on grounds that are clearly unreasonable or untenable." *Id.* (quoting *Gabelmann v. NFO, Inc.*, 606 N.W.2d 339, 342 (Iowa 2000)). After reviewing the record we conclude the district court did not abuse its discretion in awarding Sylvia $7000 for attorney fees and court costs.

Katherine also argues Kenneth should pay $5000 for her appellate attorney fees. Because Katherine has not succeeded on appeal, we do not award her appellate attorney fees.

Sylvia asks us to award her appellate attorney fees. *See Schaffer v. Frank Moywer Constr. Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (reasoning a statute that provides for attorney fees also contemplates the award of appellate attorney fees when the statute does not explicitly prohibit appellate attorney fees). She does not specify an amount she believes to be reasonable. After reviewing the

relevant factors, we award appellate attorney fees in the amount of $5000 to Sylvia. Costs are assessed Katherine.

**AFFIRMED.**