# IN THE COURT OF APPEALS OF IOWA

No. 23-0090
Filed February 7, 2024

**BERNARD J. FISCHER,**
    Plaintiff-Appellant,

**vs.**

**PAULINE M. FISCHER, GREGORY FISCHER, and THERESA LANE,**
    Defendant-Appellees.
_____

Appeal from the Iowa District Court for Pottawattamie County, Greg W. Steensland, Judge.

Bernard Fischer appeals the district court's ruling dismissing his petition to review the actions of agents under his mother's power of attorney and denying his claim for attorney fees. **AFFIRMED.**

Matthew V. Stierman, Council Bluffs, for appellant.

Joseph D. Thornton of Smith Peterson Law Firm, LLP, Council Bluffs, for appellee.

Considered by Bower, C.J., and Ahlers and Chicchelly, JJ.

**AHLERS, Judge.**

In 2019, when she was approaching eighty-eight years of age, Pauline Fischer signed a power of attorney naming two of her children—Gregory Fischer and Theresa Lane—as her agents. In 2021, Pauline's son Bernard (Ben) Fischer filed a petition pursuant to Iowa Code section 633B.116 (2021) requesting information about the power of attorney, Pauline's mental capacity, Pauline's estate planning documents, and leases of her farmland. He also asked the court to construe the power of attorney, review Gregory and Theresa's conduct, and award him attorney fees.

During the lead-up to trial, the court ordered Gregory and Theresa to provide Ben with much of the information he requested. After Ben received the information, the case proceeded to trial, at which Ben asked the court to determine that Gregory and Theresa breached their fiduciary duties.

Ben claimed Gregory and Theresa breached their fiduciary duties based on numerous transactions that occurred after Pauline became ill in 2020 and moved from her farmstead to live with Theresa. Some of the transactions at issue were carried out by Gregory and Theresa on Pauline's behalf pursuant to the power of attorney, and some were carried out by Pauline herself.

After a trial, the district court determined that none of the transactions were a breach of Gregory or Theresa's fiduciary duties. The court did not grant Ben the attorney fees he requested. Ben appeals both the finding that his siblings did not breach their fiduciary duties and the denial of his claim for attorney fees. He also asks for appellate attorney fees.

## I.      Standard of Review

This is an action in equity, so our review is de novo.  *Wallace v. Wildensee*, 990 N.W.2d 637, 642 (Iowa 2023).  With de novo review, we give weight to the district court's factual findings, especially concerning witness credibility, but we are not bound by them.  *McNaughten v. Chartier*, 977 N.W.2d 1, 8 (Iowa 2022)*.*

## II.      Governing Statute and Standards

Iowa Code chapter 633B governs powers of attorney and this action. Because Pauline signed a document granting Gregory and Theresa the authority to act in her place, the statute defines the document as a "power of attorney," Pauline as the "principal," and Gregory and Theresa each as an "agent."  *See* Iowa Code § 633B.102(1) (defining agent), (9) (defining power of attorney), and (11) (defining principal).  Section 633B.116(1) permits designated classes of persons to "petition a court to construe a power of attorney or to review an agent's conduct." One class of designated persons permitted to file such a petition is the principal's "descendant or an individual who would qualify as a presumptive heir of the principal."  *Id.* § 633B.116(1)(d).  No one disputes that Ben, as Pauline's son, falls within this class of persons permitted to file a petition to review Gregory and Theresa's conduct as Pauline's agents.

As Pauline's agents under the power of attorney, Gregory and Theresa had a fiduciary relationship with Pauline.  *See Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 52 (Iowa 2003) ("Some relationships, such as those between . . . principal and agent . . . 'necessarily give rise to a fiduciary relationship.'" (quoting *Kurth v. Van Horn*, 380 N.W.2d 693, 696 (Iowa 1986)).  As fiduciaries, Theresa and Gregory are required to act in Pauline's best interest.  *In re Est. of Crabtree*,

550 N.W.2d 168, 171 (Iowa 1996). "A transfer to a grantee standing in . . . a fiduciary relationship to the grantor is presumptively fraudulent . . . ." *Mendenhall v. Judy*, 671 N.W.2d 452, 454 (Iowa 2003). When there is a transfer to a grantee standing in a fiduciary relationship, the burden is on "the grantee to negate a presumption of undue influence by clear, convincing, and satisfactory evidence." *Id.* at 454–55. The grantee can meet that burden by proving that he or she acted in good faith. *Jackson v. Schrader*, 676 N.W.2d 599, 605 (Iowa 2003).

## III. Breach-of-Fiduciary-Duty Claims

Ben asserts the agents breached their fiduciary duties in five ways:

(1)     Purchasing a pickup in Theresa's name with Pauline's money;

(2)     Making payments to Theresa for services in caring for Pauline;

(3)     Paying Gregory for services in preparing Pauline's house for sale;

(4)     Permitting or making ATM withdrawals from Pauline's account; and

(5)     Leasing Pauline's farmland at below-market rates.

The district court addressed each of these claims and found no breach of duty by Gregory or Theresa. On appeal, Ben asks us to find otherwise. We address each claim in turn.

### A. Pickup Purchase

Around the time Pauline moved from her farmstead to live with Theresa, Pauline's vehicles were sold. Even though Pauline could no longer drive, she requested that her money be used to purchase a vehicle to transport her to her various activities, including medical visits and shopping excursions. Pauline was capable of making financial decisions at that time, so Gregory and Theresa honored Pauline's request and spent $11,400 of Pauline's money to purchase a

used pickup. Because Pauline no longer had a driver's license, the truck was placed in Theresa's name so that it could be titled, registered, and insured. Although the evidence shows that Theresa's son used the vehicle for his own benefit a few times, the evidence also establishes that the truck was mainly used to drive Pauline around to her activities. Following our de novo review, we agree with the district court that, while the truck may not have been the best use of Pauline's funds, it was purchased at her behest and for her benefit. The purchase was not a breach of fiduciary duty.

### B. Payments to Theresa

After Pauline's 2020 illness, Pauline could no longer live alone. This left the options of Pauline moving in with Theresa or moving into a nursing home. At the time the decision was made, Pauline was capable of making her own decisions. One circumstance that influenced the decision was that it was April 2020, and COVID-19 concerns and restrictions were high. Living in a nursing home would have required Pauline to be isolated in her room without contact with other residents or family members. After a discussion between Theresa, Gregory, Roberta (another child of Pauline's), and Pauline, it was decided it would be better for Pauline to move in with Theresa. This decision saved Pauline the $6200-per-month cost of a nursing home. However, Pauline was opposed to being a "freeloader," so she agreed that Theresa should be paid $375 per week for her services in providing a home and care for Pauline. By the time Pauline eventually moved to a nursing home about fourteen months after moving in with Theresa, Theresa was paid a total of $22,300 (about fifty-nine and one-half weeks of payments at $375 per week).

Theresa did not provide records demonstrating the cost of taking care of Pauline at home, but she did testify that her utilities costs increased, and she provided care for Pauline, including providing room and board, taking her to medical appointments, taking her out to eat, taking her for drives, taking her shopping, and taking her to church. Ben argues that Theresa has not met her burden of showing good faith because she could not provide records or receipts to support her decision to charge Pauline $375 per week. While Theresa arguably had a responsibility to keep more records than the bank records showing these payments to her, *see* Iowa Code § 633B.114(2)(d), we disagree with Ben's contention that Theresa failed to meet her burden of showing that she acted in good faith for the benefit of Pauline. Moving in with Theresa, even at a cost of $375 per week, was in Pauline's best interest. A fact has been proven by clear, convincing, and satisfactory evidence if "there is no serious or substantial uncertainty about the conclusion to be drawn from it." *Mendenhall*, 671 N.W.2d at 454. There is no serious doubt that Theresa received these payments in good faith. *Cf. Miller v. Eisentrager*, No. 09-0596, 2009 WL 5126118, at *3 (Iowa Ct. App. Dec. 30, 2009) (concluding an agent could not rebut the presumption of undue influence when she admitted using the principal's funds for her and her family's benefit, although still providing him care, and almost completely depleted the principal's estate). We further find the payments were fair, for a reasonable amount, and made for reasonable services provided by Theresa. Theresa did not breach her fiduciary duty by receiving these payments.

As part of his argument, Ben claims Theresa cannot rely on Pauline's knowledge of and agreement to the payments because Theresa has not proven

that Pauline was not incapacitated. The record provides persuasive and unrebutted testimony that Pauline was capable of handling her own affairs until she went to the nursing home, at which time payments to Theresa stopped.[1] The evidence shows that Pauline was an active woman who was not incapacitated from making decisions during the time she lived with Theresa. When she became incapacitated, Theresa was no longer able to meet all of Pauline's needs, and Pauline then moved to a nursing home. We do not find that Pauline was incapacitated at the time she lived with Theresa and agreed to pay Theresa for room, board, and other services, so we reject Ben's argument to the contrary.

### C. Payment to Gregory for House Sale Preparation

Next, Ben challenges the $4300 paid to Gregory for his work getting Pauline's house ready for sale. The evidence establishes that this figure was reached by calculating two percent of the purchase price of the house and Pauline agreed to the figure to compensate Gregory for his work and expenditures. While Gregory failed to present perfect records of the work he did or its value, he did testify to the work he did and filed an affidavit explaining the same. At trial, he testified that he had replaced the locks, handled snow removal, provided lawn service, kept up the garden, and prepared the home for sale. This testimony went unrebutted. We find that Gregory met his burden to prove that he acted in good

---

[1] While there was technically a payment to Theresa for services rendered after Pauline went to the nursing home, the record shows that the weekly payments of $375 were not made each week. There were several gaps in payments coupled with payments making up for the gap. One of those "fill the gap" payments occurred after Pauline went to the nursing home, but would still have been payment for time periods when Pauline was living with Theresa.

faith. Because the payment was fair and reasonable and the work done by Gregory was in Pauline's best interest, Gregory did not breach his fiduciary duty.

### D. ATM Withdrawals

Ben also challenges many ATM withdrawals for everyday expenditures made by Pauline or on her behalf. These include expenditures for groceries, dining out, and shopping. Ben claims this spending was unusual for his frugal mother, and that she was not competent to be making these purchases. Ben's claim of incompetency appears to stem from the admissions at trial that Pauline's mental state began to decline after her 2020 illness and that by the time of trial she was not competent. But no persuasive evidence in the record supports the assertion that during the time she made these expenditures (2020–2021) she was incompetent. Ben also suggests that Theresa's son may have been responsible for some of the purchases. No persuasive evidence in the record supports this claim or suggests that these purchases were not made by Pauline or at her request. There is no breach of fiduciary duty simply because Pauline was spending more than Ben thought prudent.

### E. Farmland Leases

Finally, Ben contends Gregory and other family members received a gift in the form of renting Pauline's farmland at discounted lease rates. Because the power of attorney does not allow Pauline's agents to give gifts, Ben argues Theresa and Gregory breached their fiduciary duties and the power of attorney by leasing land to family members at below-market rates.

Pauline has a history of leasing farmland to her family members, including Ben and his children, at below-market rates. Theresa, acting on Pauline's behalf,

tried to honor this pattern by leasing farmland to family members, including Gregory, at the low end of fair rent, but still within the range of rents paid in the county for farmland of similar quality. Pauline's attorney, who has experience helping Pauline rent her farmland and knowledge of the local rents, testified that he considered the rent to be within the range of the fair and reasonable rates for the area, and therefore not a gift. Data from Iowa State University regarding farmland rental rates presented as evidence by Ben supports the finding that, at the very least, the 2022 rent charged to Gregory was within the range of rents in the county for similar quality land. Gregory also testified that he is renting farmland of a similar quality from a third party who charges him even less in rent than what he pays to rent Pauline's farmland. After our de novo review of the entire record, we conclude the farmland was leased to family members for a fair rental price and the leases are therefore not a gift. As a result, we find Theresa and Gregory proved they were acting in good faith, and there was no breach of fiduciary duty related to the farm leases.

## IV.    Attorney Fees

Ben asked the district court for attorney fees and was denied. Ben appeals this denial, arguing that because he was the successful party, Gregory and Theresa should pay his attorney fees. Under Iowa Code section 633B.116(4), the court may award attorney fees to the prevailing party. We review the district court's decision whether to award attorney fees for abuse of discretion. *NCJC, Inc. v. WMG, L.C.*, 960 N.W.2d 58, 61 (Iowa 2021). We will reverse only if the district court's ruling rests on grounds that are clearly unreasonable or untenable. *Id.* The district court found that Ben's claim was not brought in good faith:

It is clear from Ben's own testimony and the exhibits received, Ben was motivated to bring this action out of his belief that he was not being treated fairly and in retaliation for not being able to lease the farm ground for which he claims he had a "lifetime" lease. The voice and text messages in the spring 2021 and his own testimony make his intentions clear. Iowa Code § 633B.116 is not intended to be used as a sword to bring grievances for alleged past wrongs. Ben received what the statute allows him to get. No other remedy is available to him.

Aside from asking the court to review the agents' conduct—which resulted in the district court and us concluding that the agents did not breach their fiduciary duties—Ben requested nothing besides information. Ben's petition was successful to the extent that the court ordered Gregory and Theresa to disclose some of the information Ben requested, but he was unsuccessful in proving a breach of fiduciary duty. We agree with the district court's findings that Ben's motivation for filing his petition and continuing the litigation after receiving the information he asked for was anger with his siblings over matters unrelated to those which he asked the court to review. We find the district court did not abuse its discretion when it denied Ben attorney fees.

Ben also seeks appellate attorney fees. Because section 633B.116(4) does not limit attorney fee awards to fees incurred during the district court proceedings, we may make such an award to the prevailing party. *See Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (not limiting statutory attorney fees to those incurred in the district court). As Ben did not prevail on appeal, we decline his request for appellate attorney fees.

## V.      Conclusion

Upon our de novo review, we find that Theresa and Gregory successfully rebutted the presumption of undue influence attached to the transactions from

which they benefitted and that they did not breach their fiduciary duties regarding any of the other challenged transactions. We also find that the district court did not abuse its discretion in denying Ben's claim for attorney fees, and we decline to award Ben appellate attorney fees.

**AFFIRMED.**